STATE, DEFENDANT IN ERROR, v. ALFONSO LAUDISE, PLAINTIFF IN ERROR.

Submitted March 23, 1914—Decided June 15, 1914.

Upon a trial for murder of an infant, evidence of a third person was admitted of an accusation by the prisoner's wife of the paternity of the child in his presence and in the presence of the witness, of his silence and final reply. *Held*, that it was admissible as evidence of his own conduct and language and none the less evidential because occasioned by words of the wife, and not inadmissible as a confidential communication between husband and wife.

---

On error to Essex Oyer and Terminer.

For the state, *Louis Hood* and *Andrew Van Blarcom*.

For the plaintiff in error, *John A. Bernhard* and *Theodore D. Gottlieb.*

The opinion of the court was delivered by

SWAYZE, J. The defendant was convicted of the murder of his illegitimate infant child. The errors argued in his brief are two. He complains of the admission of testimony by a third person as to a statement made in his presence by his wife and his silence and final reply. It is said that this in effect was compelling the wife to give evidence against her husband in a criminal proceeding, a course not authorized by section 5 of the Evidence act. We think the argument involves a misapprehension of the nature of the evidence. Whatever effect the testimony may have had was due not to the statements of the wife but to the silence and final reply of the husband. The evidence was the evidence of his own conduct and his own language, and the fact that the occasion of his conduct and language was the words of his wife does not make it less evidential than any other conduct or omission on his part. *Boyles* v. *McEowen,* 3 *N. J. L.* 677. The distinction is clearly stated by *Wigm.,* § 2232. Nor was the evidence objectionable as a confidential communication between husband and wife. It was not confidential; it was an accusation by the wife that the husband was the father of the newly-born illegitimate child of her sister, made in the presence of a neighbor who had been called in to assist the child's mother. *Id.,* § 2336. If we entertained any doubt as to the admissibility of the evidence, we, nevertheless, could not reverse the judgment, for the alleged error was harmless. It amounted, at most, to an admission of the paternity of the child, and that was not denied, but sworn to by the defendant as a witness in his own behalf.

The second error was the alleged failure of the trial judge to charge upon the question of manslaughter. The defence was that the infant was dead before the defendant saw it, but it was also suggested that death may have been caused by negligence in failing to give the newly-born infant proper at-

tention. If the defendant's first claim was true, there was no question of manslaughter in the case. If, however, we assume that the infant came to him alive and died for want of proper attention, the court should have charged as to manslaughter. We think the charge in this respect was sufficient. The defendant requested the court to charge that if the defendant was negligent in his examination of the baby before wrapping it up, and that because of such negligence the child died, the defendant might be found guilty only of criminal negligence. The judge so charged. The term "criminal negligence" is not technically accurate; criminal negligence which results in death is manslaughter, but the error in nomenclature was the error of the defendant and he cannot be heard to complain that the judge adopted his own language. He complains, however, because the judge added, "and in that event you would find the defendant guilty of a lesser crime than that of murder in the first degree, which I have already defined to you and which you must specify in your verdict." The defendant contends that this charge permitted only a verdict of murder in the first degree or murder in the second degree. This contention overlooks the fact that the judge had just told the jury that they might find the defendant guilty of criminal negligence and had defined that crime in the defendant's own words. If the jury had rendered a verdict of guilty of criminal negligence, it might, indeed, have been necessary for the court to explain further to the jury that criminal negligence in a case like this was called in our legal terminology "manslaughter." No harm could arise to the defendant from the mere inadvertence in the technical nomenclature. But the judge immediately afterwards told the jury they might find the defendant guilty of murder in the first degree, murder in the second degree or manslaughter; and that in the latter case, it would be only upon the theory that the jury believed the defendant's story that he simply went up to the room, and without any intention of doing harm to it, believing it to be dead, carelessly took the child away while it was still alive.

We find no error in the record and the judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GAR-RISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ. 13.

*For reversal*—None.